**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **ONENETTA LaBEACH,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **5:07-CV-12(HL)** |
| **WAL-MART STORES, INC. and** | : | |
| **JOHN ZAPF,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

# ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 26).

For the following reasons, their Motion is granted.

## I.    BACKGROUND

Construed in the light most favorable to Plaintiff as the nonmoving party, the

facts are as follows.

Plaintiff Onenetta LaBeach, a black female, started working for Wal-Mart on

August 22, 2005, when she was hired as a Tire Lube Express ("TLE") Management

Trainee in Fort Meyers, Florida.  (Pla.'s Dep. 41-43; 46-47.)  On January 6, 2006,

Plaintiff accepted a position as a TLE Department Manager at Wal-Mart Store No.

1121 in Milledgeville, Georgia, earning an annual salary of $32,000.  (Massey Dep.

36.)

1

Plaintiff contends that shortly after she started working at Store No. 1121, the Store's Manager, John Zapf, a white male, started harassing her racially and sexually.  She identifies three racist statements that Zapf made during the course of her employment at the Store.  First, shortly after she started, Zapf told her to fire all the black people in her TLE Department because they are niggers, lazy, and too stupid to do their job.  (Pla.'s Dep. 123.)  Second, while discussing in Plaintiff's presence the theft of radios from the Store, Zapf stated that the radios were stolen by niggers.  (Id.)  Third, responding to Plaintiff's complaints about her floor not being cleaned, Zapf stated "what's the matter, isn't your people used to dirt."  (Id.)

In addition to these racist comments, Plaintiff contends that Zapf made two sexist comments.  First, shortly after she started, he told Plaintiff that women should not have her job because they do not know how to do it.  (Id. 100.)  Second, he told Plaintiff that women take things too personally and "don't know how to play the game."  (Id.)

Plaintiff also contends that Zapf attempted to make her job more difficult because she is black and a female.  She asserts that he told the cleaning crew not to clean her office, that he told the stock crew not to stock her Department, and that he told other TLE associates to undermine her authority by disobeying her.  (Id. 123; 129; 173-74.)

Plaintiff complained to Patsy Massey, the District TLE Manager, about Zapf's

treatment of her.[1]  (Id. 137.)  Massey allegedly told Plaintiff that she would have to learn to deal with it and suggested that she utilize Wal-Mart's Open Door Policy and speak to Chad Nora, a Wal-Mart Market Manager, about Zapf's conduct.  (Id.)  On April 29, 2006, Plaintiff met with Nora to discuss Zapf's behavior, and Nora opened a Red Book Investigation into Plaintiff's allegations.  (Id.)  Approximately two weeks later, Plaintiff was terminated.

During her four months of employment, Plaintiff received two "Coachings" for job performance under Wal-Mart's Coaching for Improvement Policy.  Wal-Mart's Coaching process involves four steps: (1) a Verbal Coaching; (2) a Written Coaching; (3) a Decision-Making Day Coaching; and (4) Termination.  (Massey Dep. 50-51.)  Plaintiff first received a Verbal Coaching on March 9, 2006.  (Pla.'s Dep. 58-60; Massey Dep. 37-38.)  Plaintiff received that Coaching because she failed to ensure that a TLE Associate, Lashard Todd, completed his Computer Based Learning ("CBL") Training Sessions.  (Pla.'s Dep. 58-60.)

Plaintiff's second Coaching was a Written Coaching that she received on April 14, 2006.  It is Wal-Mart policy that all internal applicants be interviewed before an external applicant is hired.  (Massey Dep. 39-42.)  Plaintiff received her second Coaching because she failed to interview an internal applicant for an opening in her

---

[1]Wal-Mart's TLE Departments maintain a separate chain of direct supervision from other Departments.  (Willits Dep. 40-41; Zapf Dep. 14-15.)  TLE Managers report directly to a District TLE Manager, who in turn reports to a Regional TLE Manager. (Willits Dep. 41-32; Massey Dep. 16-17.)

Department before she hired an external applicant.[2] (Pla.'s Dep. 74; Massey Dep. 39-42.)

In addition to her Coachings, Massey and Wendy Willits, the Regional TLE Manager, received complaints from TLE Department employees about Plaintiff's abrasive management style (Massey Dep. 34-38; Willits Dep. 19-20), and several customers complained to Massey about Plaintiff's poor customer service skills. (Massey Dep. 34-38.) Plaintiff also had difficulty maintaining her Department in an orderly manner. During a tour of Plaintiff's Department on March 22, 2006, Willits discovered numerous issues, including overflowing trash, improper use of safety equipment, and tools improperly stored. (Willits Dep. 22.) The Department was in such disarray that Massey assigned seven TLE Managers from other stores to clean Plaintiff's Department and improve its operating conditions. (Id. 27-28.)

Shortly before Plaintiff was terminated, two incidents occurred while Massey was on vacation. In the first incident, which occurred on May 6, 2006, a TLE technician backed a customer's car into another customer's parked car. (Massey Dep. 50-51.) An investigation determined that the technician was not using a spotter

---

[2]Plaintiff contests this Coaching; however, there is no dispute that she did not interview an internal applicant for the position. Plaintiff simply disagrees with the manner in which the Wal-Mart policy was applied to her. Plaintiff argues that she did not have to interview the applicant because the applicant failed to appear for the interview. Whether Plaintiff disagrees with Wal-Mart's policy or the way it was applied is irrelevant. What is relevant is whether she violated a Wal-Mart policy, and Plaintiff has failed to point to anything in the record that shows she did not.

at the time. (Pla.'s Dep. 74.) Wal-Mart policy requires that technicians use another technician as a spotter when backing a customer's car out of a service bay.[3] (Id. 74-76.) The second incident is referred to by Defendants as a wheel-off incident. In that incident, shortly after a customer had his car serviced in Plaintiff's TLE Department, four of five lug nuts came off one of the wheels on the customer's vehicle. (Id. 80-83.) Wal-Mart paid to have the customer's car towed to a repair facility and paid for the repairs. (Id.)

When Massey returned from vacation, she learned of both incidents and determined that a Coaching was appropriate for each incident. Because Plaintiff already had two previous Coachings, the automobile collision would have resulted in a Decision-Making Day Coaching, while the wheel-off incident would have resulted in Plaintiff's termination. (Massey Dep. 51.) Rather than Coach Plaintiff for the collision and then terminate her for the wheel-off incident, Massey asserts that

---

[3]In her Response Brief, Plaintiff now seems to dispute the conclusion that the technician was not using the spotting procedure. However, on page 74 of her deposition, Plaintiff acknowledges that it was determined that a spotter was not used, and on page 76, she states that a technician should have been acting as a spotter but she does not know why one was not. Later in her deposition, she maintains that she does not know what happened the morning of the collision because she was not there. (Pla.'s Dep. 77-78.) The only evidence that arguably supports Plaintiff's current position is her deposition testimony that "[t]here were two guys out there" when the collision occurred. (Id. 76.) Wal-Mart's spotting procedure does not require simply that a technician "be out there"; it requires that a technician stand outside the service bay and direct the customer's vehicle out. (Id.) Plaintiff has simply failed to point to anything in the record that would support a finding that the spotting procedure was followed the morning of the collision.

she made the decision to terminate Plaintiff for the wheel-off incident.[4]  (Id.)

On May 15, 2006, Plaintiff met with Zapf and Massey.  (Pla.'s Dep. 96.)
During the meeting, Zapf informed Plaintiff that she was being terminated for a
violation of Wal-Mart's Wheel-Off Policy.  (Id.)

On January 11, 2007, Plaintiff filed suit in this Court against Wal-Mart Stores,
Inc.,[5] Patsy Massey, and John Zapf, asserting claims under Title VII, § 1981, and the
Equal Pay Act.  In her Complaint (Doc. 1), Plaintiff claims that she was subjected to
a racially hostile work environment, that she was terminated because of her race,
and that she was terminated in retaliation for complaining of race discrimination, all
in violation of Title VII and § 1981.  Plaintiff also claims that Defendants violated Title
VII by subjecting her to a sexually hostile work environment, terminating her because
of her gender, and terminating her in retaliation for complaining of gender
discrimination.  Last, Plaintiff asserts a claim under the Equal Pay Act because Zach
Smith, a male TLE Department Manager at a different store, made $6,000 more per
year than Plaintiff.

On June 28, 2007, the parties stipulated to a dismissal of Plaintiff's claims
against Massey.  (Doc. 9.)  On June 24, 2008, Defendants Wal-Mart and Zapf filed

---

[4]As will be discussed later in this Order, Plaintiff contends that Zapf was
"influential" in the decision to terminate Plaintiff.  This assertion is unsupported by the
record.  Zapf and Massey both assert that Massey made the decision to terminate
Plaintiff.  The only evidence that Zapf played any role in that decision is Willits's
testimony that she "believes" Zapf played a role.

[5]Wal-Mart Stores East, L.P. is the proper defendant.

the Motion for Summary Judgment that is presently before the Court.  In their Motion, Defendants seek summary judgment on all of Plaintiff's claims.

## II.   DISCUSSION

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party.  Id. at 254-55.  The Court may not, however, make credibility determinations or weigh the evidence.  Id. at 255; see also  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific

7

evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### A.    Hostile Work Environment Claims

Plaintiff asserts a claim under Title VII and 42 U.S.C. § 1981 for a racially hostile work environment. Plaintiff also asserts under Title VII a claim for a sexually hostile work environment. To establish a hostile work environment claim under either Title VII or § 1981,[6] a plaintiff must establish five elements: (1) she was a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her membership in her protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) grounds for holding the employer liable. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). Defendants have moved for summary judgment on both of

---

[6]Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, this Court will address Plaintiff's § 1981 and Title VII claims together.

Plaintiff's hostile work environment claims on the ground that she cannot establish that she was subject to harassment that was so sufficiently severe or pervasive as to alter the terms and conditions of her employment.

### 1.  Racial Harassment

In support of her racial harassment claim, Plaintiff points to three statements that Zapf made during her approximately four months of employment at Store No. 1121.  In January or February 2006, Zapf told her to fire all the black people in the TLE Department because they were niggers, lazy, and too stupid to do their job. (Pl.'s Dep. 123-24.)  In March or April 2006, Zapf was discussing with Plaintiff and another employee the theft of radios from the Store when Zapf stated that the "radios were stolen by niggers."  (Id. 123.)  Finally, when Plaintiff complained to Zapf that the cleaning crew was not cleaning her office, Zapf responded by saying "what's the rush, isn't your people used to dirt."  (Id. 122-23.)

The analysis of whether workplace conduct is sufficiently severe or pervasive to constitute actionable harassment has both a subjective and an objective component.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  The conduct must be such that a reasonable person would perceive it as creating an objectively hostile or abusive work environment, and the plaintiff must subjectively perceive the environment as hostile or abusive.  Id.  In making this determination, courts must consider the following factors: the frequency of the discrimination; the severity of the conduct; whether the conduct was threatening or humiliating; and whether the

conduct unreasonably interfered with the plaintiff's job performance.  Id.; Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521-22 (11th Cir. 1995).

A hostile work environment is not created by the "'mere utterance of an...epithet which engenders offensive feeling in an employee.'"  Harris, 510 U.S. at 21 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (omission in original) (internal citations omitted).  Racial slurs uttered by coworkers constitute actionable harassment only when the slurs are so "'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'" Edwards, 49 F.3d at 1522 (quoting E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)).  A hostile work environment is created only "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Harris, 510 U.S. at 21 (quoting Meritor Savings Bank, FSB, 477 U.S. at 65, 67) (internal citations omitted).

Here, the three offensive statements allegedly uttered by Zapf over a four month period are insufficient to establish that Plaintiff was subjected to an objectively racially hostile work environment.  These statements were infrequent, occurred over several months, and were uttered by only one person.  The statements are certainly offensive, but Plaintiff was not subjected to harassment that was threatening or that could be classified as "severe." Although Plaintiff contends that the statements were humiliating and made her job difficult, she has failed to articulate how the slurs

10

unreasonably interfered with her job performance.   In sum, Plaintiff was not subjected to an environment where racial slurs were so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." Edwards, 49 F.3d at 1522 (quoting Beverage Canners, Inc., 897 F.2d at 1068).

In addition to the evidence of racial slurs, Plaintiff bases her racial harassment claim on three other instances of alleged discriminatory mistreatment.  First, she contends that Zapf instructed the floor cleaning crew not to clean her office.  (Pla.'s Dep. 129.)  Plaintiff's only evidence of this consists of a statement by an unidentified member of the cleaning crew that Zapf instructed them not to clean her office floor.[7] (Pla.'s Dep. 130-31.)  It is well-established that in considering a motion for summary judgment, a court may consider only that evidence which is admissible or reducible to admissible form at trial.  See Pritchard v. S. Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996).  Although Zapf's statement may be admissible under Federal Rule of Evidence 801(d)(2)(D) as a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, Plaintiff's recitation of what the unidentified employee told her that Zapf said is inadmissible.  See id. at 1130 (holding that statements of unknown coworkers are inadmissible hearsay.)  As a result, the Court will not consider this evidence.

---

[7]As noted above, Zapf responded to Plaintiff's complaints about her floor not being cleaned by stating "what's the matter, isn't your people used to dirt."  Although this statement is admissible, it does not constitute evidence that Zapf instructed the cleaning crew not to clean her office.

Second, Plaintiff asserts that Zapf instructed the stock crew not to stock merchandise in her Department. (Id. 131.) As evidence of this fact, Plaintiff again points to the hearsay statement of an unidentified member of the stock crew who told Plaintiff that Zapf told the crew not to stock merchandise in the TLE Department. This statement by an unidentified member of the stock crew is inadmissible; however, Plaintiff testified in her deposition that Zapf admitted to ordering the stock crew not to stock her Department. (Id. 132) Zapf's statement is admissible under Rule 801(d)(2)(D). Nevertheless, this evidence is insufficient to create an issue of material fact that Plaintiff's work environment was objectively hostile or abusive. Plaintiff has failed to point to any evidence that Zapf's directive was motivated by racial animus. Her assertion that it was is based on nothing more than rank speculation. In addition, even when viewed collectively with his racial slurs, there is no evidence that Zapf's orders to the stock crew created an environment where harassment was severe or pervasive.

Last, Plaintiff points to evidence that Zapf urged other TLE Department employees to disobey Plaintiff and undermine her authority. (Id. 173.) The evidence on which she relies, however, constitutes inadmissible hearsay. Specifically, Plaintiff relies on her own deposition testimony that Victoria Ergle, an employee in the TLE Department, told Plaintiff that Zapf told her (Ergle) that she did not have to obey Plaintiff, and that Zapf promised her a promotion if she undermined Plaintiff's authority. (Id.) This testimony is inadmissible, and thus the Court will not consider

12

it.  See Rojas v. Florida, 285 F.3d 1339, 1342 n.3 (11th Cir. 2002) (ruling that testimony was inadmissible hearsay where the plaintiff testified that a coworker told the plaintiff that the plaintiff's supervisor told the coworker that the coworker did not need to obey the plaintiff because the plaintiff was a woman).

In conclusion, Plaintiff's only evidence of racial harassment consists of three racist statements uttered by one person over the course of several months.  These statements, although offensive, were not so numerous and severe as to create a racially hostile work environment.  Plaintiff's other attempts to establish a racially hostile work environment fail because she relies on inadmissible evidence to establish some of the alleged instances of harassment, and where she does rely on admissible evidence, she has not pointed to any evidence that the challenged conduct was motivated by racial animus or that such conduct constituted harassment that was severe or pervasive.  For these reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim for a racially hostile work environment.

### 2.  Gender Harassment

Plaintiff's claim of gender harassment also fails.  Plaintiff's evidence of gender harassment consists of two statements that Zapf allegedly made over the course of fourth months.  In the first statement, Zapf told Plaintiff that women should not have her job because they do not know how to do it.  (Pla.'s Dep. 100.)  In the second statement, Zapf told Plaintiff that women take things too personally and "don't know

13

how to play the game." (Id.)  As with Plaintiff's racial harassment claim, these two statements are not so severe and numerous as to create a genuine issue of material fact on whether Plaintiff was subjected to a hostile work environment based on gender.

Plaintiff also attempts to rely on the same evidence that she relied on for her racial harassment claim:  Zapf's instructions to the floor crew not to clean her floor; his order to the stock crew not to stock her Department; and his statements to Ergle. As noted above, Plaintiff has not pointed to any admissible evidence of Zapf's instructions to the floor crew or his statements to Ergle.  Plaintiff has pointed to admissible evidence that Zapf instructed the stock crew not to stock her Department; however, Plaintiff has not pointed to any evidence that would allow a reasonable jury to infer that this directive was motivated by gender animus or that it constituted harassment that was severe or pervasive.  As a result, Defendants are entitled to summary judgment on Plaintiff's gender harassment claim.

### B.    Termination Claims

Plaintiff also asserts claims for unlawful termination based on race and gender.  An employment discrimination plaintiff may attempt to show unlawful discrimination through either direct or circumstantial evidence.  Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  Direct evidence of discrimination is evidence that "'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'"  Id. (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125

14

F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original).  Direct evidence consists only of "'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

In the absence of direct evidence, a plaintiff must establish her discrimination claim by relying on the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).  To establish a prima facie case of discrimination in a termination case, a plaintiff must prove four elements: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or similarly situated individuals outside her protected class were treated more favorably.  Maynard v. Board of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason ("LNR") for its employment action.[8] Burke-Fowler, 447 F.3d at 1323.  If the defendant articulates an LNR, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual.  Id.  The plaintiff can prove pretext

---

[8]The defendant's burden at this stage is a burden of production.  See Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th cir. 2005).

"'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson, 405 F.3d at 1289 (quoting Burdine, 450 U.S. at 256).

In this case, Defendants have moved for summary judgment on both of Plaintiff's termination claims.  Defendants contend that Plaintiff cannot establish a prima facie case of either racial or gender discrimination.  Assuming that she can establish a prima facie case for each of these claims, they argue that Plaintiff cannot rebut Defendants' LNR for her termination.

### 1.  Termination based on race

Plaintiff contends that she does not need to rely on the McDonnell Douglas framework because she has presented direct evidence of discrimination in the form of Zapf's racist statements.  The Court disagrees.  Discriminatory remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination. Standard, 161 F.3d at 1330; E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990).  Zapf's comments occurred outside the decisionmaking process and were unrelated to Plaintiff's termination.  Because Plaintiff has not produced any direct evidence of discrimination, she must rely on circumstantial evidence to survive summary judgment.

Plaintiff has established a prima facie case that her termination was based on race.  She is black, she was qualified, she was terminated, and her replacement was

16

white.  Because Plaintiff has established a prima facie case, Defendants bear the burden of articulating an LNR.

Defendants LNR is Misconduct with Coachings following a violation of Wal-Mart's Wheel-Off Policy.  Specifically, Defendants point to the two Coachings that Plaintiff received on March 9, 2006, and April 14, 2006, respectively.  The March 9th Coaching resulted from Plaintiff's failure to ensure that a TLE Associate completed his CBL Training Sessions in a timely manner.  (Pla.'s Dep. 58-60.)  Plaintiff received the April 14th Coaching because she did not follow a Wal-Mart policy that requires managers to interview all internal applicants for a position before hiring an external applicant.  (Massey Dep. 39-42.)

In addition to these two Coachings, two incidents occurred while Massey was on vacation, and thus, Plaintiff did not receive Coachings for those incidents. Nevertheless, Defendants contend that those two incidents–the collision in her Department and the wheel-off incident–were instrumental in Wal-Mart's decision to terminate her.  When Massey returned from vacation, she learned of both incidents and determined that a Coaching was appropriate for each incident.  Because Plaintiff already had two active Coachings, the automobile collision would have resulted in a Decision-Making Day Coaching, while the wheel-off incident would have resulted in Plaintiff's termination.  (Massey Dep. 51.)  Rather than Coach Plaintiff for the collision and then terminate her for the wheel-off incident, Massey maintains that she made the decision to terminate her for the wheel-off.  (Id.)

17

Because Defendants have articulated an LNR for Wal-Mart's decision to terminate Plaintiff, the burden shifts back to Plaintiff to show that the proferred reason is a pretext for discrimination.  Plaintiff makes five arguments that the LNR is pretext.  First, she contends that a white TLE Department Manager was not terminated for a wheel-off incident.  Second, no other TLE Department Managers were ever terminated for a wheel-off incident.   Third, Defendants have given inconsistent reasons for her termination.  Fourth, Zapf received Coachings but was not terminated.  Last, Zapf's racist remarks are circumstantial evidence of pretext.

In support of her first contention, Plaintiff points to a wheel-off incident involving Rodney Davis, a white TLE Manager at another store in Massey's District. Davis was eventually terminated because he attempted to cover-up the wheel-off incident.  (Id. 62-63.)   Plaintiff asserts, however, that Massey testified at her deposition that, had he not covered-up the incident, Davis was only due to receive a Coaching.  (Id.)

Plaintiff's attempt to use Davis's incident as evidence of pretext fails for at least two reasons.  First, nowhere in her deposition did Massey testify that Davis would have only received a Coaching for the wheel-off incident.  She testified only that Davis tried to cover-up the incident to avoid being Coached.  (Id.)  Second, Massey cannot point to any evidence to show that she and Davis shared a similar disciplinary record.  In the absence of any evidence showing that she and Davis were similarly situated, evidence of the discipline Davis received or would have

18

received is of no probative value.  See Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").

Next, Plaintiff asserts that wheel-off incidents were frequent occurrences, at least once a month in her Region, yet Wendy Willits testified that no other TLE Managers were ever fired for a wheel-off.  This attempt to establish pretext also fails. Most notably, Plaintiff has not introduced any evidence that any of the other TLE Managers with wheel-off incidents, other than Davis, were outside her protected class. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999) (holding that a plaintiff can establish pretext by showing that other employees outside the plaintiff's protected class engaged in similar acts but were not similarly treated).

In addition, Plaintiff has not shown that any of these other Managers were similarly situated as she has failed to show that they shared a similar disciplinary record.  Plaintiff had two other Coachings, and she would have received a third Coaching for the automobile collision had Massey not been on vacation.  In addition to these incidents, Massey and Willits received complaints from TLE Department employees about the way Plaintiff treated them, and several customers complained to Massey about Plaintiff's behavior.  (Massey Dep. 34-38.)  Plaintiff also failed to maintain her Department in an orderly manner.  When Willits toured Plaintiff's

Department on March 22, 2006, she discovered numerous issues, including overflowing trash, improper use of safety equipment, and tools improperly stored. (Willits Dep. 22.)  The Department was in such disarray that Massey assigned seven TLE Managers from other stores to clean Plaintiff's Department and improve its operating conditions.  (Id. 27-28.)  In sum, the wheel-off incident was not the only straw; it was simply the last.

Third, Plaintiff asserts that Wal-Mart has given inconsistent reasons for her termination.  Plaintiff bases this argument on Wal-Mart's original explanation that Plaintiff was terminated for violating the Wheel-Off Policy, as contrasted with its current explanation that Plaintiff was terminated for Misconduct with Coachings. These two explanations are not inconsistent.  The violation of the Wheel-Off Policy constituted misconduct, and Wal-Mart's current explanation is that Plaintiff was terminated for Misconduct with Coachings, with the wheel-off incident constituting the final offense.  This is not inconsistent with Wal-Mart's original explanation; it simply elaborates on it.  See Standard, 161 F.3d at 1332 (holding that employer's reason was not inconsistent where later explanation for adverse employment action simply elaborated on the employer's original explanation); Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1377 (11th Cir. 1996) (holding that explanations were not inconsistent where later explanation was simply more specific than the original one).

Fourth, Plaintiff argues that Zapf received Coachings but was not terminated.

20

This argument consists of one sentence buried in a footnote on page 15 of Plaintiff's Response Brief. In that sentence, Plaintiff cites to page 54 of Zapf's deposition and avers that Zapf's three previous Coachings preclude summary judgment. But Plaintiff does not explain why this fact precludes summary judgment. Presumably, Plaintiff is attempting to establish that somebody outside her protected class with similar disciplinary violations was treated more favorably; however, her attempt to make this showing fails. Zapf is not similarly situated to Plaintiff in terms of either his position or his prior disciplinary violations. Zapf is the Manager of an entire Wal-Mart Store; Plaintiff only managed one Department. Zapf received three Coachings from 1994 to 2008; Plaintiff received two Coachings in several months, plus the two incidents that occurred while Massey was on vacation, the numerous complaints from customers and associates, and her failure to properly maintain her Department. Also, there is no way to determine whether Zapf's Coachings resulted from misconduct that was similar to Plaintiff's because his deposition testimony does not provide any specifics about the events that led to his Coachings. He testified only that the Coachings were for business decisions he made. For these reasons, Zapf's previous Coachings have no probative value on the issue of pretext.

Last, Plaintiff argues that Zapf's racist remarks are circumstantial evidence of pretext. In Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1291 (11th Cir. 1998), the Eleventh Circuit held that discriminatory comments, though not sufficient to serve as direct evidence of discrimination, can contribute to a circumstantial showing of

21

pretext.  The Eleventh Circuit has cautioned, however, that discriminatory comments are generally not sufficient, by themselves, to show pretext.  <u>Rojas</u>, 285 F.3d at 1343.  The Eleventh Circuit in <u>Rojas</u> observed that the stray comments in <u>Ross</u> supported an inference of discrimination only because the plaintiff presented "fairly strong additional evidence [that] supported a finding of pretext."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Scott</u> <u>v. Suncoast Beverage Sales, Ltd.</u>, 295 F.3d 1223, 1229 (11th Cir. 2002) ("Although a comment unrelated to a termination decision may contribute to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext.").

　　　In this case, Zapf's three discriminatory comments are insufficient to support a finding of pretext.  Unlike <u>Ross</u>, there is not any "strong" additional evidence of pretext.  In fact, there is not any other evidence of pretext.  Also, Zapf is the only person who uttered racist statements at Plaintiff's workplace, and the evidence does not support a finding that he played an influential role, if any role at all, in the decision to terminate Plaintiff.  The only evidence that Zapf had any role at all in the decision is Willits's deposition testimony that she "believes" he did.  (Willits Dep. 38.)  Regardless of whether Willits's "belief" would entitle a jury to infer that Zapf played a role in the decision, the record is devoid of any evidence that he played an important role, and the record is clear that Massey was an important decision-maker, if not the only one.  This fact, in addition to the lack of any other evidence of pretext, leads this Court to conclude that Zapf's racist comments are insufficient to support

22

a finding of pretext.

Because Defendants have articulated an LNR for Plaintiff's termination and Plaintiff has failed to rebut this showing by demonstrating that a jury could infer that the proferred explanation is a pretext for race discrimination, the Court finds that Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

### 2. Termination based on gender

On her gender discrimination claim, Plaintiff cannot establish the fourth element of her prima facie case.  Plaintiff's replacement, a woman, was within Plaintiff's protected class.  (Massey Dep. 15, 48.)  Thus, she must establish the fourth element by showing that similarly situated individuals outside her protected class were treated more favorably, and as demonstrated above, she cannot make this showing.  For this reason alone, Defendants are entitled to summary judgment on Plaintiff's gender discrimination claim.

In addition, even if she could establish a prima facie case, Plaintiff cannot demonstrate that the Defendants proferred LNR, Misconduct with Coachings, is a pretext for unlawful discrimination.  Plaintiff's attempts to establish that this LNR is pretext are the same methods she relied on to attempt to establish pretext for her race discrimination claim.  The Court addressed and rejected each of her pretext arguments in discussing her race discrimination claim, and the Court need not repeat its analysis here.  It is, however, necessary to address Zapf's sexist comments because they were not evidence that was relied on to show pretext on her race

discrimination claim, and thus, this Court has not determined whether Zapf's sexist comments are sufficient to support a finding of pretext.

Zapf made two sexist comments. First, he told Plaintiff that women should not have her job, and second, he told her that women take things too personally. These comments are insufficient to support a finding of pretext for several reasons. First, Plaintiff has not presented any other evidence of pretext. Second, Zapf, the only person who made such comments, played a minimal role, if any, in the decision to terminate Plaintiff, and the primary decision-maker, Massey, is a woman. Last, Plaintiff was replaced by a woman. For these reasons, the Court finds that Zapf's gender-biased comments do not support a finding of pretext.

## C.   Retaliation Claim

Plaintiff contends that her termination was in retaliation for complaining to Chad Nora about Zapf's racist and sexist statements. In the absence of direct evidence of retaliation, the McDonnell Douglas burden shifting framework that is used to analyze disparate treatment claims is also used to analyze retaliation claims. The plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there is a causal connection between the two events. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Once the plaintiff makes this showing, the burden shifts to the employer to articulate an LNR. Id. If the employer does so, the plaintiff bears the burden of proving that the reason provided

24

by the employer is a pretext for prohibited retaliatory conduct.  Id.  Plaintiff has introduced no direct evidence of retaliation, and therefore, she must establish her retaliation claim by relying on this burden shifting framework.

Here, Defendants contend that Plaintiff cannot establish a prima facie case of retaliation because she cannot show that the relevant decision-maker was aware of any protected activity.  Specifically, they contend that although Massey knew that Plaintiff spoke to Nora, Massey did not know the substance of Plaintiff's conversations with him.  There is, however, some evidence that Massey told Plaintiff to speak to Nora about Zapf's comments.  (Pla.'s Dep. 137-38.)  A jury could thus infer that Massey knew that Plaintiff was speaking to Nora about Zapf's racist and sexist statements.

Nevertheless, the Court finds that summary judgment is appropriate because Plaintiff cannot show that Defendants' LNR for her termination is pretext.  Plaintiff attempts to show pretext the same ways she attempted to show pretext on her race and gender claims.  For the same reasons that this Court rejected her attempts to establish pretext for those claims, the Court finds that she has failed to introduce any evidence from which a jury could infer pretext for her retaliation claim.

### D.   Equal Pay Act Claim

Last, Plaintiff asserts an Equal Pay Act Claim against Wal-Mart on the basis that she was paid $6,000 less per year than a male TLE Manager at a different store in Massey's District.  "An employee demonstrates a prima facie case of an Equal

Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." <u>Steger v. Gen. Elec. Co.</u>, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (internal quotations and citations omitted). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." <u>Waters v. Turner, Wood & Smith Ins. Agency, Inc.</u>, 874 F.2d 797, 799 (11th Cir. 1989).

If the employee establishes a prima facie case, the employer "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) ... any other factor other than sex.'" <u>Steger</u>, 318 F.3d at 1078 (quoting 29 U.S.C. § 206(d)(1)). Permissible factors other than sex include, for example, an individual's experience, training, or ability, as long as those factors are not used as a pretext for gender discrimination. <u>Irby v. Bittick</u>, 44 F.3d 949, 955-56 (11th Cir. 1995). When an employer establishes that there are no genuine issues of material fact regarding the validity of its affirmative defense, the employer is entitled to summary judgment. <u>See</u> <u>Mulhall v. Advance Sec., Inc.</u>, 19 F.3d 586, 590-91 (11th Cir. 1994).

In this case, Plaintiff asserts that she has established a prima facie case because Zach Smith, a male TLE Department Manager in Massey's District, earns $38,000 per year, $6,000 more than Plaintiff's annual salary of $32,000. Plaintiff,

however, has failed to demonstrate that she and Smith performed equal work or had substantially similar jobs.  Her only evidence that they performed substantially similar jobs is that she and Smith shared the same job title: TLE Department Manager.  But job titles and descriptions are not controlling.  Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998); Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1049 n.12 (5th Cir. 1973).[9]  The fundamental inquiry is actual job content, Arrington, 139 F.2d at 876, and Plaintiff has failed to present any evidence of the actual duties that Smith performed.  Without such evidence, it would be rank speculation for this Court to conclude that she and Smith performed jobs that were substantially similar under the Equal Pay Act.  See E.E.O.C. v. Mercy Hosp. and Med. Ctr., 709 F.2d 1195, 1197 (7th Cir. 1983) (stating that plaintiff cannot rely solely on "job titles, classifications or descriptions" to establish that work is substantially similar under the Equal Pay Act); E.E.O.C. v. Sears, Roebuck & Co., 628 F. Supp. 1264, 1341 (N.D. Ill. 1986) ("Thus, [the plaintiff] must introduce proof of the jobs as they are actually performed.  It may not rely on the fact that employees bear the same job title, job code or written position description to prove equality.").  Thus, the Court finds that Plaintiff has failed to prove a prima facie case under the Equal Pay Act because her only evidence that she and Smith performed

---

[9]Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

substantially similar jobs is that they shared the same job title.

Even if Plaintiff could establish a prima facie case, Wal-Mart has demonstrated that there are no genuine issues of material fact regarding the validity of its affirmative defense.  Wal-Mart contends that it determines managers' pay by factors other than sex, such as experience and previous experience with Wal-Mart. (Nora Decl. ¶ 3.)  In accordance with this policy, it contends that it paid Smith more because he had four years more experience working for Wal-Mart than Plaintiff. (Massey Dep. Ex. 11.)  Plaintiff has not pointed to any evidence that creates a genuine issue of material fact that Smith did not possess such experience, or that Wal-Mart's asserted justification is pretext for gender discrimination.  As a result, the Court finds that there are no genuine issues of material fact regarding Wal-Mart's affirmative defense that it paid Smith a higher salary because of a factor other than sex, namely, his prior work experience with Wal-Mart.  For these reasons, Wal-Mart is entitled to summary judgment on Plaintiff's claim under the Equal Pay Act.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

**SO ORDERED**, this the 27th day of March, 2009.


                                                      *s/ Hugh Lawson*
                                                      **HUGH LAWSON, Judge**

dhc

28